UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                 Case No. 22-20614

v.                                          Honorable Nancy G. Edmunds

ERICK GABRIEL PASILLAS-GARCIA,

    Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS UNDER 8 U.S.C. § 1326(d) [18], DENYING DEFENDANT'S MOTION TO DISMISS FOR *BRADY* VIOLATION [20], AND RESOLVING DEFENDANT'S MOTION FOR JURY INSTRUCTION [19]**

Defendant Erick Gabriel Pasillas-Garcia is charged in a two-count indictment with unlawful re-entry in violation of 8 U.S.C. § 1326(a) (Count I) and visa fraud in violation of 18 U.S.C. § 1546(a) (Count II). (ECF No. 12.) The matter is before the Court on three motions filed by Defendant: Motion to Dismiss under 8 U.S.C. § 1326(d) (ECF No. 18); Motion to Dismiss for *Brady* Violation (ECF No. 20); and Motion for Jury Instruction (ECF No. 19). The government has responded to all three motions and Defendant has filed replies. (ECF Nos. 24, 25, 26, 27, 28, 29.) The Court held a hearing on February 6, 2023. For the reasons below, the Court DENIES Defendant's motions to dismiss. The Court also RESOLVES Defendant's motion for jury instruction as discussed below.

**I.    Background**

Defendant is a 30-year-old native and citizen of Mexico. On October 11, 2015, Defendant was arrested by Customs and Border Patrol agents in Winterhaven, California. He was served with a Notice and Order of Expedited Removal and removed from the United States to Mexico that same day ("First Removal"). Eighteen days later, on October

1

29, 2015, Defendant was arrested by Customs and Border Patrol agents near Douglas, Arizona. Again, he was served with a Notice and Order of Expedited Removal and removed to Mexico on the same day ("Second Removal").

On October 20, 2022, Defendant was arrested by Livonia, Michigan police. It is unknown when and where Defendant re-entered the United States. At the time of his arrest, Defendant presented a counterfeit green card. On October 21, 2022, ICE took custody of Defendant and served him with a Notice of Intent/Decision to Reinstate Prior Order of Removal. On October 31, 2022, a criminal complaint was filed, charging Defendant with unlawful re-entry and visa fraud. (ECF No. 1.) Defendant consented to detention at the time of his initial appearance on November 1, 2022. (ECF No. 9.) On November 15, 2022, a preliminary examination was held, and probable cause was found for both of the charged offenses. The next day, the indictment was filed against Defendant. (ECF No. 12.) He was arraigned on the indictment on November 22, 2022.

II.     **Defendant's Motion to Dismiss under 8 U.S.C. § 1326(d) [18]**

Defendant seeks dismissal of the unlawful re-entry charge based on a collateral attack challenging his prior removals. Under § 1326(d), a defendant may collaterally attack any deportation upon which his unlawful re-entry charge is based if he proves that: (1) he "exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the [defendant] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair."

It is undisputed that the nature of the expedited removal proceedings under which Defendant was removed meets the first two requirements of the relevant analysis. *See*

*United States v. Vieira-Ferel*, No. 3:17-cr-00427-JO, 2019 U.S. Dist. LEXIS 130205, at *5 (D. Or. Aug. 5, 2019) ("The statute governing expedited removal, 8 U.S.C. § 1225(b)(1), provides no opportunity for administrative or judicial review."). Thus, Defendant's motion turns on the third prong—whether his prior removals were fundamentally unfair.

To prove fundamental unfairness, "a defendant must show both a due process violation emanating from defects in the underlying deportation proceeding and resulting prejudice." *United States v. Estrada*, 876 F.3d 885, 887 (6th Cir. 2017). To establish prejudice, a defendant must show there is a "reasonable probability" that his "'claims could have supported a different outcome.'" *United States v. Vargas-Molina*, 392 F. Supp. 3d 809, 825 (E.D. Mich. 2019) (quoting *Mendoza-Garcia v. Barr*, 918 F.3d 498, 508 (6th Cir. 2019)); *see also United States v. Copeland*, 376 F.3d 61, 73 (2d Cir. 2004) ("Prejudice is shown where defects in the deportation proceedings may well have resulted in a deportation that would not otherwise have occurred.") (quotations and citation omitted).

Defendant argues that the First Removal was fundamentally unfair because he was not permitted to speak to a consular officer despite expressing a desire to do so.[1] And he argues that the Second Removal was fundamentally unfair because he may not have been informed of his consulate notification rights.

Article 36 of the Vienna Convention on Consular Relations requires notifying a foreign national of his right to consular assistance upon arrest. This right has been codified in immigration regulations. 8 C.F.R. § 236.1(e). The government relies on the case of *United States v. Emuegbunam*, 268 F.3d 377 (6th Cir. 2001), to argue that the

---

[1] Defendant initially argued that the First Removal was also unfair because Form I-867B, which is required during an expedited removal, was not executed. But after the government found and filed the completed form (ECF No. 25-3), he withdrew that issue.

Vienna Convention does not create enforceable individual rights. But *Emuegbunam* did not involve a collateral attack on a prior removal under § 1326(d) and does not foreclose Defendant's argument. For purposes of Defendant's motion, the Court will assume, without deciding, that the failure to allow a defendant to exercise his right to consular assistance is sufficient to sustain a collateral attack on a prior removal. But the record here does not establish that this procedural defect took place during the prior removals.

Defendant notes that while the record of sworn statement (Form I-867A) completed during the First Removal demonstrates that he said "yes" when asked "Do you wish to speak to a consulate officer of Mexico?," (*see* ECF No. 25-2, PageID.113), the record does not indicate consulate assistance was made available to him. But Defendant has not submitted an affidavit or declaration establishing that he was not in fact permitted to speak to a consular officer.[2] Ultimately, the Court need not determine whether there was a defect in the First Removal, however, because Defendant's unlawful re-entry charge also rests on his Second Removal. Defendant asserts in both his motion and reply that he was not informed of his consular notification rights then. But during oral argument, Defense counsel acknowledged that the discovery indicates Defendant was notified of those rights during the Second Removal and he actually declined to speak to the consulate.[3] While this information was not included in the record of sworn statement,

---

[2] The government contacted the border patrol agent (Christian Wilson) who processed the First Removal, and he stated it was common practice for the consular officer from Mexico to come to the facility and speak to any detainee who had requested consular notification. But Agent Wilson did not have any specific recollection of Defendant's removal. Thus, the Court will not rely on this information in its ruling.

[3] Defense counsel stated that this information was not included in the pleadings due to an oversight in the initial review of the discovery.

(ECF No. 25-6), there is no evidence in the record to the contrary. Thus, Defendant has not shown there was a procedural defect in the Second Removal.

Even if there was a defect in either or both of Defendant's removals, he would not be entitled to relief unless he could also show prejudice. In *United States v. Rangel-Gonzales*, 617 F.2d 529, 533 (9th Cir. 1980), the court held that the failure to advise the defendant of his right to consult with consular authorities in the underlying deportation warranted dismissal because he submitted evidence establishing that "he did not know of his right to consult with consular officials, that he would have availed himself of that right had he known of it, and that there was a likelihood that the contact would have resulted in assistance to him in resisting deportation." Subsequent cases have distinguished that case and found no prejudice where the defendant did not establish that the consul would have done anything to help him, *see United States v. Esparza-Ponce*, 193 F.3d 1133, 1139 (9th Cir. 1999), or where the defendant failed to show how the consulate's assistance would have actually affected the outcome of the deportation proceedings, *see United States v. Arango-Chairez*, 875 F. Supp. 609, 619 (D. Neb. 1994).

Here, Defendant argues that the consulate would have been able to assist him both times by informing him of his right to voluntarily withdraw his application for admission to the United States and helping him advocate for this option. Immigration officers are given discretion to permit individuals to withdraw their application for admission in lieu of removal proceedings. *See* 8 C.F.R. § 1235.4. But this is not an automatic right. Under the CBP Inspector's Field Manual, § 17.2(a), immigration officers consider the following factors when evaluating a request for permission to withdraw: "(1) The seriousness of the immigration violation; (2) Previous findings of inadmissibility

5

against the alien; (3) Intent on the part of the alien to violate the law; (4) Ability to easily overcome the ground of inadmissibility (i.e., lack of documents); (5) Age or poor health of the alien; and (6) Other humanitarian or public interest considerations."

While there was no evidence of an intent to violate the law on the part of Defendant, several other relevant considerations would have weighed against allowing him to withdraw his application, such as the lack of an ability to easily overcome the ground of inadmissibility, his age and health, and in the case of the Second Removal, the previous finding of inadmissibility. Thus, the Court finds that Defendant has not shown there is a reasonable probability that speaking to a Mexican consular officer would have led to withdrawal of his application for admission to the United States. In sum, because Defendant has not established there were procedural defects in both removals or that any purported defects prejudiced him, he is not entitled to relief under § 1326(d).

### III.     Defendant's Motion to Dismiss for *Brady* Violation [20]

Defendant seeks dismissal of the indictment due to allegedly false testimony provided by Officer Justin Monday during the preliminary examination. More specifically, during that exam, which took place on November 15, 2022, Officer Monday testified that Defendant told him that his mother is a citizen of Mexico. But later, on November 18, 2022, after the government provided Defendant with Rule 16 discovery, it became apparent that Defendant had told Officer Monday that his mother is a United States citizen, although he does not know her full name or whereabouts. (*See* ECF No. 24-2, PageID.83.) Defendant argues that the late disclosure of these notes and the earlier conflicting testimony violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (requiring the government to disclose evidence that is favorable to the defendant and material to his

6

guilt or punishment), and *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (finding a due process violation where the government "although not soliciting false evidence, allow[ed] it to go uncorrected when it appear[ed]").

The government argues that *Brady* is a trial right that does not apply in the preliminary stages of a criminal proceeding, but Defendant emphasizes that this Court issued an order on November 1, 2022 pursuant to the Due Process Protections Act, warning the government that the failure to comply with its *Brady* obligations in a timely manner may result in consequences. (ECF No. 5.) Defendant asks the Court to enforce that order by fashioning an appropriate sanction.[4]

Despite the Court's order, the record does not suggest there was a *Brady* violation where the underlying information was disclosed shortly after the indictment was returned and well before trial. And with regard to the testimony provided at the preliminary exam, the government states that the officer simply did not find Defendant's assertions regarding his mother being a United States citizen credible in light of his prior sworn statements to the contrary. In light of this explanation and the discovery that was provided, the Court does not find there was any misconduct that would warrant sanctions.

IV. **Defendant's Motion for Jury Instruction [19]**

Defendant requests a jury instruction with a mens rea requirement for § 1326(a), suggesting the Court use the Fifth Circuit's pattern instruction in his motion.[5] In its response, the government agrees that § 1326(a) is a general intent statute, which requires proof of the defendant's "intent to do the act of entering the country," *see United*

---

[4] While Defendant seeks dismissal of this case in his motion, he states in his reply that an alternative remedy would be to exclude Officer Monday from testifying at trial.
[5] The Sixth Circuit does not have a pattern instruction for § 1326(a).

7

States v. Martinez-Morel, 118 F.3d 710, 717 (10th Cir. 1997), but argues that the Fifth Circuit's instruction is confusing to the extent it uses the phrase "knowingly found," see ECF No. 26, PageID.122-23 (citing United States v. Sierra-Ledesma, 645 F.3d 1213 (10th Cir. 2011)). In his reply, Defendant states that he does not object to adopting the Tenth Circuit's approach but asks the Court to use that circuit's official jury instruction. The third element of the instruction would read as follows in this case: "the defendant was found in the United States having entered knowingly." See 10th Cir. Crim. Pattern Jury Instruction 2.05 (2021). This instruction includes the mens rea requirement for the charged offense without using the confusing language the government takes issue with. See Sierra-Ledesma, 645 F.3d at 1222-23 (discussing an earlier version of the pattern instruction). Thus, the Court finds the Tenth Circuit's § 1326(a) pattern jury instruction appropriate.

**V.  Conclusion**

For the foregoing reasons, Defendant's Motion to Dismiss under 8 U.S.C. § 1326(d) is DENIED, Defendant's Motion to Dismiss for *Brady* Violation is DENIED, and Defendant's Motion for Jury Instruction is RESOLVED as discussed above.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: February 9, 2023

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 9, 2023, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager